OPINION OF THE COURT
Walter B. Tolub, J.
Defendant Pitney Bowes, Inc. (Pitney) moves, pursuant to CPLR 3212, to dismiss the complaint on the ground that it cannot be held liable for the posttermination tortious conduct of one of its former employees.
Plaintiff Lillian Schlesinger moves for an order precluding defendant from testifying at trial based on its alleged failure to comply with prior court discovery orders.
Plaintiff was an employee of Audit & Surveys, Inc. (A&S). A&S had a contract with Pitney whereby it leased Pitney’s mailing equipment and Pitney provided sale and service on that equipment. Plaintiff had the responsibility of overseeing the performance of this contract and, in that regard, had to interact with Pitney’s representative, Bennet Elfenbein.*
In a letter dated November 18, 1994 to Dan Gooley, Mr. Elfenbein’s Pitney supervisor, plaintiff complained that she had received an irate telephone call from Mr. Elfenbein as a result of her earlier conversation with Mr. Gooley in which she had expressed her dissatisfaction with Mr. Elfenbein’s performance. Shortly thereafter, Pitney replaced Mr. Elfenbein with Fred Doublet as the Pitney representative for the A&S account. In a letter dated April 10, 1995 to Mr. Gooley, plaintiff notified him to what she believed to be an improperly modified lease agreement that Mr. Elfenbein had prepared. In the meantime, on March 13, 1995, Mr. Elfenbein went out on disability due to complaints of dizziness, fatigue, headaches, depression and anxiety.
As a result of plaintiff’s April letter, Pitney conducted an internal investigation and discovered that the lease for A&S and another company had been altered without authorization. Upon returning to work on June 15, 1995, Mr. Gooley and Tom Gallagher, another Pitney supervisor, had a meeting with Mr. Elfenbein in which they brought to his attention plaintiff’s *300 April letter and a prior memorandum in his personnel file concerning his unauthorized alteration of a customer’s lease and the warning that “if it happened again, serious disciplinary action would be taken up to and including termination” (Gooley EBT, at 140-141). Both then confronted Mr. Elfenbein with the altered leases, who exclaimed that “this is bullshit” and that they were anti-Semites. Mr. Gallagher then advised Mr. Elfenbein that based on this documentation and his response he was being terminated. Security escorted Mr. Elfenbein from the premises.
On June 16, 1995, plaintiff arrived at work and retrieved a message from her voice mail that had been left at approximately 4:00 a.m. She recognized that voice to be Mr. Elfenbein’s. The message was a warning to her to “sleep with one eye open” because he was planning to make her “pay” for costing him his job. When plaintiff notified Pitney of the threat, it provided the services of a private security firm to protect her.
Plaintiff commenced this action seeking to recover from Pitney emotional distress damages arising out of Mr. Elfenbein’s threat. She asserts two causes of action based on the following theories of liability: respondeat superior, negligent hiring and retention, and negligent disclosure of her name during the termination meeting.
Plaintiff’s cause of action based on theory of doctrine of respondeat superior must be dismissed. Under that doctrine, plaintiff must, as a threshold requirement, demonstrate that there either is or was an existing employer/employee relationship at the time of the alleged wrongful conduct (see, K. I. v New York City Bd. of Educ., 256 AD2d 189, 191 [1st Dept 1998]).
Here, the record demonstrates that at the time Mr. Elfenbein left the allegedly threatening voice-mail message he had already been terminated as a Pitney employee. As such, plaintiff cannot satisfy her threshold requirement. In any event, the record establishes that Mr. Elfenbein departed from his duties for solely personal motives unrelated to the furtherance of Pitney’s business. As such, plaintiff’s respondeat superior theory would still fail (see, Judith M. v Sisters of Charity Hosp., 93 NY2d 932, 933 [1999]).
As to the theory of negligent hiring and retention and negligent disclosure, both which seek to hold Pitney directly, rather than vicariously, liable for Mr. Elfenbein’s tortious conduct, the threshold question that must be decided is whether Pitney owed plaintiff a duty of care (cf, Loucks v Com *301 munity Home Care Serv., 209 AD2d 484, 485 [2d Dept 1994] [defendant owed no duty to warn because plaintiff terminated its services prior to the assault]). For the reasons that follow, both theories must also fail.
The existence and scope of an alleged tortfeasor’s duty is a matter of law to be determined by the court (see, Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579, 585 [1994]). The facts herein are analogous to those in Palka. There, as here, the injured party was not a party to the contract, and was injured as a consequence of the defendant vendor’s negligent performance of its service contract. In determining whether defendant vendor owed a duty of care to the noncontracting party, the Court of Appeals held that the nexus for a tort relationship between the defendant’s contractual obligation and the injured noncontracting plaintiff’s reliance and injury must be direct and demonstrable, not incidental or merely collateral (id., at 587). The Court of Appeals went on to find that the defendant vendor owed the noncontracting plaintiff a duty of care because it “undertook to provide a service to Ellis Hospital and did so negligently” and because “its conduct in undertaking that particular service placed [plaintiffl in an unreasonably risky setting greater than that, had, [the defendant] never ventured into its hospital servicing role at all” (id.).
Unlike Palka (supra), plaintiff’s reliance and injury were not direct and demonstrable, but, instead, incidental and merely collateral to Pitney’s contract with A&S, plaintiffs employer. Nothing in that contract could have remotely placed Pitney on reasonable notice that it should have anticipated that plaintiff would expect that it would be directly responsible for Mr. Elfenbein’s assaultive behavior. As such, Pitney, owing no duty to plaintiff, cannot be held liable for negligence under either of plaintiffs theories.
Accordingly, Pitney’s motion for summary judgment dismissing the complaint is granted, and the complaint is hereby dismissed. Plaintiffs motion to compel discovery is denied as moot.

 Pitney hired Mr. Elfenbein in 1982, who continuously worked for Pitney until July 1990 when he voluntarily resigned due to the lack of promotional opportunities. Pitney rehired Mr. Elfenbein in November 1992.